# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NATALIE PROSZAK AND | * | CIVIL ACTION NO.: 2:24-CV-00821 |
| LEONARDO RIVERA | * | -JTM-KWR |
| | * | |
| VERSUS | * | SECTION "H" (4) |
| | * | |
| DOORDASH, INC., VOYAGEER | * | JUDGE JANE TRICHE MILAZZO |
| INDEMNITY INSURANCE COMPANY, | * | |
| SARAH COLE AMBROSE AND | * | MAGISTRATE JUDGE |
| BRYSON MATTHEW FAUL | * | KAREN WELLS ROBY |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>MEMORANDUM IN SUPPORT OF MOTION TO REMAND</u>

MAY IT PLEASE THE COURT:

Plaintiffs, Natalie Proszak and Leonardo Rivera, originally filed suit in Louisiana state court to recover for damages suffered as a result of injuries sustained in an automobile collision. Removing defendants then improperly removed the case based on diversity jurisdiction. Plaintiffs now move this Honorable Court to remand this case to the Civil District Court for the Parish of Orleans, State of Louisiana.

## <u>FACTUAL BACK GROUND</u>

On May 29, 2022, Plaintiffs, Natalie Proszak and Leonardo Rivera, were stopped at a red light at the intersection of Camp St. and Julia St. in New Orleans when they were suddenly rear-ended by Defendant, Sarah Cole Ambrose.[1]  The responding New Orleans Police Department Officer, Scott Fanning, took a statement from Ms. Ambrose at the scene.[2]  In that statement, Ms. Ambrose admitted to Officer Fanning "that she was distracted because she was using the phone

---

[1] Exhibit A, Uniform Motor Vehicle Traffic Crash Report.
[2] *Id.*

application DoorDash."[3]  At the time of the collision Ms. Ambrose was operating a 2010 Honda Odyssey with the permission of its owner, Bryson Matthew Faul.

As a result, Plaintiffs filed suit against Defendants, Ms. Ambrose and Mr. Faul, for negligence and alleged that Defendants were employees of DoorDash, Inc. and operating within the course and scope of their employment at the time of the collision.[4]  Plaintiffs also made claims of independent negligence against DoorDash, Inc. for negligent hiring and training as well as for "negligently failing to maintain and enforce proper security, oversight, and/or supervision protocols, policies, and procedures, and requisite technology to ensure that a safe and competent driver was utilizing the DoorDash, Inc. application to provide delivery services."[5]  Plaintiffs also alleged that Voyager Indemnity Insurance Company provided liability coverage to Ms. Ambrose, Mr. Faul, and DoorDash, Inc. for their negligence in causing the collision.[6]

On November 17, 2023, Plaintiff, Leonardo Rivera answered Interrogatories and Requests for Production propounded by Defendant, DoorDash, Inc.[7]  Mr. Rivera's answers included the disclosure of medical records and bills documenting past and future medical expenses for injuries caused by the subject collision.[8]  Specifically, Mr. Rivera disclosed affirmatively to Defendant that he received a recommendation from his treating physician (Eric Sterne, M.D. of Louisiana Pain Specialists) for cervical facet injections at C4-C5 and C5-C6.  Mr. Rivera also provided Defendant with an estimate for future medical expenses regarding the cervical facet injections in the amount

---

[3] *Id.*
[4] See Plaintiffs' Petition for Damages, Rec. Doc. 6-1, p. 1-8.
[5] *Id.*
[6] *Id.*
[7] See Leonardo Rivera's Answers to Interrogatories and Requests for Production Propounded by DoorDash, Inc., attached hereto as Exhibit B.
[8] *Id.*

of $18,785.00.[9]  Accordingly, as of November 17, 2023, Defendant was undisputedly in possession of evidence demonstrating that Mr. Rivera claimed legal damages for the cervical facet injection procedure.

On March 5, 2024, Defendant allegedly received certified medical records from Louisiana Pain Specialists.[10]  In Defendant's Notice of Removal, however, Defendant provided no evidence that Defendant actually received these documents on this date.[11]  As explained below, Plaintiff submits that Defendant has failed to bear its burden that its Notice of Removal was procedurally proper because Defendant submitted no evidence to support Defendant's contention that the clock for removal began on March 5, 2024.

On April 1, Defendant first provided Plaintiff with notice that Defendant removed this case to federal court.[12]  In Defendant's Notice of Removal, Defendant claimed that Defendant "first learned" that Mr. Rivera had undergone cervical facet injections on March 5, 2024 when Defendant allegedly received certified medical records from Louisiana Pain Specialists.[13]  As such, Defendant claimed that the certified medical records from Louisiana Pain Specialists constituted "other paper" triggering the thirty (30) day time limit for removal as of March 5, 2024.[14]  As Defendant

---

[9] *Id.*
[10] See removing Defendant's Notice of Removal ¶ XII, Rec. Doc. 2.
[11] *Id.*
[12] See counsel for DoorDash, Inc.'s email to counsel for Plaintiff, dated April 1, 2024, attached hereto as Exhibit C.  Plaintiff makes note of the fact that Defendant served Plaintiff with Defendant's State Court filing and federal Notice of Removal on April 1, 2024.  Per the federal court docket, however, Defendant appears to have refiled his Notice of Removal on April 3, 2024 as the April 1 filing was "filed in error."  Plaintiff is not aware of any state court filings that Defendant made on April 3, 2024.  To the extent the Court determines that April 3, 2024 was the date Defendant filed its removal Plaintiff would object procedurally as Defendant failed to file any state court filings contemporaneously with the subsequent April 3, 2024 notice of removal.  For purposes of this motion, however, Plaintiff will assume April 3, 2024 as the date of Defendant's Notice of Removal.
[13] See removing Defendant's Notice of Removal ¶ XII, Rec. Doc. 2.
[14] *Id.*

filed its removal on April 1, 2024 (and then refiled on April 3, 2024),[15] Defendant claimed that its removal was timely.  Plaintiff, however, as discussed herein, submits that because Defendant was already in possession of evidence demonstrating Mr. Rivera's legal damages for cervical facet injections as of November 17, 2023, the clock for removal instead began on November 17, 2023, making Defendant's April 3, 2024 Notice of Removal untimely.

Significantly, *after* Defendant claimed that the action became removeable on March 5, 2024, Defendant then moved the Civil District Court for the Parish of Orleans to enter a Stipulated Protective Order.  Defendant filed the protective order with the state court on March 28, 2024.[16] As explained herein, Plaintiff submits that Defendant's affirmative action in moving the state court to enter a protective order constituted a waiver of Defendant's right to removal.

Therefore, based on the arguments, case law, and evidence submitted herein, Plaintiff respectfully requests that the Court remand this matter.

## LAW AND ARGUMENT

Under 28 U.S.C. § 1441(a), a defendant may remove an action from state court to a federal district court if the action is one over which the court possesses original jurisdiction.  Federal courts have original jurisdiction over cases between diverse parties where the amount in controversy exceeds $75,000, exclusive of interest and costs.[17]  To determine whether jurisdiction is present for removal, courts will consider the claims in the state court petition at the time of removal.[18]  If the case stated by the initial pleading is not removable but later developments render the case removable, then removal is timely if the notice of removal is filed "within 30 days after receipt by

---

[15] See discussion of Defendant's notice of removal filing and refiling under footnote 12.
[16] Rec. Doc. 6-4, p. 31-33.
[17] 28 U.S.C. § 1332.
[18] *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."[19]

When the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.[20] "Proving a fact by a 'preponderance of the evidence' means showing the existence of a fact is more likely so than not."[21]  The defendant may make this showing in either of two ways: (1) by demonstrating that it is "facially apparent" that the claims are likely above $75,000.00, or (2) "by setting forth the *facts* in controversy – preferably in the removal, but sometimes by affidavit – that supports a finding of the requisite amount."[22]  These two tests are applied in order, and only if the "facially apparent" test fails may the court consider the second test, which incorporates summary-judgment-type evidence relevant to the amount in controversy as of the time of removal.[23]  The removing party is required to produce such evidence at the time of removal as removal "'cannot be based simply upon conclusory allegations.'"[24]

Removal raises significant federalism concerns such that removal requirements must be construed strictly. [25]  Any ambiguity or doubt as to the propriety of removal should be resolved in

---

[19] 28 U.S.C. § 1446(b)(3).

[20]  *DeAguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993); See e.g. *Perrin v. American Modern Property and Cas. Ins. Co.*, 2024 WL 1715356, p. 2-3.

[21] *Perrin v. American Modern Prop. and Cas. Ins. Co.*, 2023 WL 1715356 (*citing Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 898 n. 1 (N.D. Tex. 2020) (*citing Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983)).

[22] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999) (*quoting Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (emphasis in original).

[23] *Id.* at 1336.

[24] *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 774 (5th Cir. 2003) (*quoting Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

[25] *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

favor of remand.[26]  The removing party has the burden of proving the existence of federal jurisdiction and, if challenged, that the removal was procedurally proper.[27]  Failure to timely remove under § 1446(b) is a procedural defect in the removal process.  Additionally, the Court must "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in plaintiff's favor."[28]

### A.    It Is Not "Facially Apparent" From Plaintiffs' Petition That Their Claims Exceed $75,000.

In making the "facially apparent" determination, the proper procedure for the Court is to examine the plain wording of the complaint and to decide whether the allegations set forth a claim that likely exceeds the jurisdictional amount.[29]

As stated in Plaintiffs' Petition, plaintiffs sought recovery of general damages and special damages for injuries they sustained as a result of the May 29, 2022 motor vehicle collision.[30]  On its face, plaintiffs' Petition for Damages sets forth nothing to indicate that the damages will exceed the jurisdictional threshold.[31]  Removing Defendant admits as much in their Notice of Removal stating: "Plaintiffs' Petition for Damages did not provide any allegation that would indicate that the amount in controversy exceeds the amount necessary to invoke federal diversity jurisdiction."[32]

---

[26] *Manguno v. Prudential Property and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002) (citing *Acuna v. Brown & Root, Inc*., 200 F.3d 335, 339 (5th Cir. 2000).

[27] *See e.g. Manguno v. Prudential Property and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

[28] *Morgan v. Chubbs Lloyds Ins. Co. of Tex*., 541 F.Supp.3d 754, 757 (N.D. Tex. 2021) (Pittman, J.) (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).

[29] *See Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).

[30] (Plaintiffs' Original Petition for Damages) of removing defendant's Notice of Removal, Rec. Doc. 6-2.

[31] *Id.*

[32] See removing Defendant's Notice of Removal ¶ X, Rec. Doc. 2.

Moreover, even if it were "facially apparent" from Plaintiffs' Petition that their claims exceeded $75,000.00, Defendant's Notice of Removal would be untimely.  Under 28 U.S.C. § 1446, the removing party must file their notice of removal within thirty (30) days of receipt of a copy of the initial pleading.[33]  Plaintiffs served Defendant, Doordash, Inc., with a copy of their Petition for Damages on August 1, 2023.[34]  Defendant filed their Notice of Removal on April 3, 2024.[35]  As such, even if it were facially apparent from Plaintiffs' Petition that Plaintiffs' claims exceeded $75,000.00, Defendant's April 3, 2024 notice of removal was more than thirty (30) days after Defendant received Plaintiffs' Petition and therefore untimely.

**B.    Defendant's April 3, 2024 Notice of Removal Was Untimely Because the Time Limit for Removal Was Triggered On November 17, 2023 When Plaintiff Answered Defendant's Interrogatories and Requests for Production**

In the Notice of Removal, Defendant claims that the thirty (30) day time limit for removal began on March 5, 2024 when Defendant allegedly received certified medical records from Louisiana Pain Specialists showing that the Plaintiff underwent cervical facet joint injections at C4-5 and C5-6 with "past medical expenses in the amount of $11,220.00."[36]  Defendant further claimed that general damages for cases involving injured plaintiffs who require cervical facet injections exceed the jurisdictional threshold of $75,000.00.[37]  Defendant then argued that receipt of the cervical facet injection procedure records on March 5, 2024 constituted "other paper" making it "unequivocally clear and certain" for the first time that the amount in controversy exceeded $75,000.00 to start the time limit running for notice of removal.

---

[33] 28 U.S.C. § 1446(b).
[34] Ex. C.
[35] See removing Defendant's Notice of Removal, Rec. Doc. 2.
[36] See removing Defendant's Notice of Removal, ¶ XII , Rec. Doc 2 (Apparently, Defendant made a direct request to Louisiana Pain Specialists for medical records and bills and Defendant received these records from Louisiana Pain Specialists on March 5, 2024.
[37] See removing Defendant's Notice of Removal, ¶ XIII, Rec. Doc 2

Defendant's entire argument that their removal was timely, however, hinges on Defendant's misleading representation that Defendant "first learned" that this was a cervical facet injection case on March 5, 2024 when Defendant allegedly received records directly from Louisiana Pain Specialists. On the contrary, it is undisputed that Defendant was already in possession of numerous records from Louisiana Pain Specialists showing that this was a cervical facet injection case as well as records from other medical providers because Plaintiff provided Defendant with these records as far back as November 17, 2023 when Plaintiff answered Defendant's Interrogatories and Requests for Production.

Accordingly, Plaintiff submits that Defendant's April 3, 2024 Notice of Removal was untimely because the thirty (30) day time limit for removal in fact began on November 17, 2023 when Plaintiff answered Defendant's Interrogatories and Requests for Production demonstrating that Mr. Rivera was seeking damages for cervical facet injections.[38] In answering Defendant's discovery requests, Plaintiff provided Defendant with medical records and bills from: (1) Louisiana Pain Specialists (past medical expenses of $2,820.00); (2) Diagnostic Imaging (past medical expenses of $2,270.00); and (3) Magnolia Physical Therapy (past medical expenses of $2,597.00).[39] *Significantly, Plaintiff's November 17, 2023 discovery answers also included Louisiana Pain Specialist's recommendation for Plaintiff to undergo cervical facet joint injections at C4-5 and C5-6 and an estimate for the cost of the procedure (future medical expenses of $18,785.00).*[40] Accordingly, as of November 17, 2023, it is undisputed that Defendant was in possession of evidence demonstrating that Plaintiff had a recommendation for cervical facet

---

[38] See Exhibit B.
[39] Plaintiff claimed a total of $7,687.00 in past medical expenses at that time.
[40] *Id.*

injections from his physician and that Plaintiff claimed $18,785.00 in future medical expenses for the cervical facet injections procedure.

Assuming Defendant's argument that it became "clear and unequivocal" that the case was removeable as of March 5, 2024 when Defendant received medical records and bills directly from Louisiana Pain Specialists showing Mr. Rivera had ultimately undergone the cervical facet injections on December 5, 2023, Plaintiffs submit that it was just as "clear and unequivocal" that the case was removeable on November 17, 2023 when Defendant received Plaintiff's discovery responses showing Mr. Rivera's recommendation for the cervical facet injections as well as the accompanying estimate showing Mr. Rivera claimed corresponding future medical expenses for the cervical facet injections.

The only difference between the March 5, 2024 records is that Mr. Rivera's estimated future medical expenses for the cervical facet injections disclosed to Defendant on November 17, 2023 then became past medical expenses as Mr. Rivera subsequently had the injection procedure in the interim on December 5, 2023.  Given that Defendant was already in possession of the recommendation for cervical facet injections and corresponding future medical expenses as of November 17, 2023, Defendant cannot credibly claim that Defendant's subsequent receipt of records from Louisiana Pain Specialists on March 5, 2024 merely showing that Mr. Rivera had ultimately undergone the very same procedure his treating physicians previously recommended he undergo somehow constitutes "other paper" from which Defendant "first learned" that the case was removeable.[41]  Defendant was in possession of "other paper" making it "unequivocally clear and certain" that the case was removable as far back as November 17, 2023 when Defendant received the recommendation for cervical facet injections and the estimate demonstrating Mr.

---

[41] See removing Defendant's Notice of Removal ¶ XII , Rec. Doc 2.

Rivera was claiming the cost of the cervical injection procedure as future medical expenses in his claims for damages.

Louisiana jurisprudence supports that Defendant was in possession of "unequivocally clear and certain" evidence to trigger the clock for removal when Plaintiff answered Defendant's discovery on November 17, 2023.  The instant matter stands in stark contrast to *Manieri v. CR England, Inc*., where the Eastern District Court of Louisiana found that the evidence in Defendant's possession did not constitute "other paper" because that evidence was not sufficiently "clear and unequivocal" to start the clock for removal.[42]

In *Manieri*, the injured plaintiff ambiguously disclosed that "her physician recommended cervical steroid injections, although 'she wanted time to think about the injection.'"[43] The Court also considered the uncertainty of her treatment plan as "she had been referred to another doctor to consult regarding whether she would be a candidate for surgery."  Given the equivocation of the injured plaintiff's discovery responses and the ambiguity of her medical condition, the Court ruled: "Although the defendant might have been able to infer from these admissions that the amount in controversy requirement was satisfied, because it 'was not unequivocally clear and certain,' the thirty day clock did not begin running when C.R. England received these discovery responses."[44] The Court further reasoned that the evidence presented was not "unequivocally clear and certain" to trigger removal because the injured Plaintiff also failed to disclose any estimated costs of any recommended or potential procedures.[45]  The Court specifically noted that "neither these documents (nor any of the defendant's other submissions) refer to the cost of such treatment."[46]

---

[42] *Manieri v. CR England, Inc*., 2019 WL 2022535, p. 3 (E.D. La. 5/8/19).
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*

The instant matter can be easily distinguished from *Manieri v. CR England, Inc.* Unlike the injured plaintiff *Manieri* who answered discovery stating that she "wanted time to think about the injection," Mr. Rivera's discovery answers were unequivocal. In response to Defendant's request for information regarding future procedures, Mr. Rivera stated on November 17, 2023: *"Plaintiff hereby provides Defendant with notice that he has received recommendations from his treating physicians for cervical facet joint injections."*[47] Moreover, *unlike the injured plaintiff in Manieri whose future medical expenses were uncertain because she failed to provide the Defendant with any estimates for any of the procedures she was considering, Mr. Rivera, by contrast, provided Defendant with an estimate for the cervical facet injections demonstrating future medical costs in the amount of $18,785.00 as part of his legal damages.*

Therefore, Plaintiff's November 17, 2023 discovery answers to Defendant were sufficiently "clear and unequivocal" to trigger the clock for removal as of that date. Plaintiff specifically put Defendant "on notice" of the cervical injection procedure making it clear as of November 17, 2023 that this was a cervical injection procedure case. Likewise, Plaintiff provided Defendant with specific documentation regarding the cost of the cervical injection procedure in order to make it clear to Defendant that Plaintiff was claiming any costs associated with the cervical injection procedure as future medical expenses in this case.

Significantly, Defendant, in their Notice of Removal, takes the position that any case involving an injured plaintiff such as Mr. Rivera who requires cervical facet injections is a case that meets the $75,000.00 threshold to invoke federal jurisdiction.[48] Plaintiffs submit that under Defendant's own logic, if the case was removeable upon Defendant's receipt of the Louisiana Pain

---

[47] Exhibit B, Plaintiff's Answers to DoorDash, Inc.'s Interrogatories.
[48] See removing Defendant's Notice of Removal, ¶ XIII, Rec. Doc 2

Specialists records on March 5, 2024 showing Mr. Rivera underwent the cervical facet injection procedure, the case was also removeable on November 17, 2023 when Plaintiff disclosed to Defendant Mr. Rivera's recommendation for the same cervical facet injection procedure, and the corresponding estimate showing the associated future medical expenses of that same procedure. As such, the only logical conclusion that can be reached, based on Defendant's own position that cervical injection cases meet the $75,000.00 jurisdictional threshold, is that the clock for removal started on November 17, 2023 when Defendant was already in possession of evidence that Mr. Rivera was claiming damages for cervical facet injections.

As a result, Defendant's removal was untimely as more than thirty (30) days elapsed between Plaintiff's discovery answers provided to Defendant on November 17, 2024 and Defendant's Notice of Removal filed on April 3, 2024. As of November 17, 2023, Defendant possessed "clear and unequivocal" evidence that this was a cervical injection case, and according to Defendant's own arguments that cervical injection cases as a matter of course meet the $75,000.00 threshold, this case was thereby removeable as of November 17, 2023. Defendant, however, failed to remove this case until April 3, 2024. As such, Defendant's removal was untimely.

Based on these facts, Plaintiff prays that this Court remand this matter to the Civil District Court for the Parish of Orleans.

### C. Defendant's Notice of Removal Filed on April 3, 2024 Was Untimely Because Defendant Presented No Evidence That Defendant In Fact Received Records From Louisiana Pain Specialists on March 5, 2024

Defendant claimed, without support, that Defendant received certified medical records from Louisiana Pain Specialists on March 5, 2024 thereby triggering the thirty (30) day clock to remove this action. In Defendant's Notice of Removal, Defendant stated:

On March 5, 2024, subsequent to service of the Petition, undersigned counsel obtained certified medical records from Louisiana Pain Specialists relative to treatment undertaken by Rivera. Those certified medical indicated that Rivera's treating physician, Dr. Eric Sterne, performed bilateral cervical facet joint injections at C5-C5 and C5-C6. Undersigned counsel first learned of River having undergone the procedure upon receipt of the certified medical records. As of the March 5, 2024 production, Rivera's past medical expenses are $11,220.00.[49]

In support of Defendant's contention that Defendant received these documents on March 5, 2024, Defendant cited in footnote 10 of their Notice of Removal to "Medical Records of LA Pain Specialists, attached as Exhibit B."[50] A review of this document, however, provides no evidence that Defendant actually received this document on March 5, 2024. Also in support of Defendant's claim that they received these documents on March 5, 2024, Defendant cited in footnote 11 within their Notice of Removal to "Medical Billing Records of Louisiana Pain Specialists, attached hereto as Exhibit C." Again, however, a review of this document also provides no evidence that Defendant actually received this document on March 5, 2024.

In fact, it appears from Exhibit C to Defendant's Notice of Removal (Louisiana Pain Specialists Billing Records) that the medical records custodian for Louisiana Pain Specialists sent the certified medical records to Defendant as early as February 27, 2024.[51] In the upper lefthand corner of the document there appears to be a transmission date listed: "2/27/24, 4:44 p.m."[52] Likewise, the custodian of medical records for Louisiana Pain Specialists executed a Medical Record Certification for the records sent to Defendant on February 27, 2024.[53]

Significantly, assuming Defendant received these records from Louisiana Pain Specialists as far back as February 27, 2024, then Defendant's Notice of Removal was untimely. If Defendant

---

[49] See removing Defendant's Notice of Removal ¶ XII , Rec. Doc 2.
[50] See removing Defendant's Notice of Removal, Exhibit B, Rec. Doc 2-2.
[51] See removing Defendant's Notice of Removal, Exhibit C, Rec. Doc 2-3.
[52] *Id.*
[53] Exhibit D, Louisiana Pain Specialists 2/27/24 Medical Records Certification.

received these records on February 27, 2024, then Defendant had only until March 28, 2023 in order to timely file Defendant's Notice of Removal. As the record reflects, however, Defendant filed its Notice of Removal on April 3, 2024; more than thirty (30) days after the removal period was seemingly triggered on February 27, 2024.

In sum, the record is devoid of any evidence proving that Defendant in fact received certified medical records from Louisiana Pain Specialists on March 5, 2024 rather than February 27, 2024. As the removing party bears the burden of proving that removal was procedurally proper, Defendant cannot prevail.[54] Defendant has simply provided no evidence in its Notice for Removal that Defendant in fact received certified records from Louisiana Pain Specialists on March 5, 2024 rather than February 27, 2024.[55] The only records provided by Defendant related to their receipt of certified medical records from Louisiana Pain Specialists show February 27, 2024 as the apparent transmission date of these records.[56]

---

[54] *Manguno v. Prudential Property and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir.2002) (citing *Acuna v. Brown & Root, Inc*., 200 F.3d 335, 339 (5th Cir. 2000).

[55] Out of an abundance of caution, Plaintiff respectfully requests that Defendant preserve and maintain all evidence related to Defendant's request and receipt of certified medical records from Louisiana Pain Specialists. This request necessarily includes the preservation of all documents and records related to both the timing and manner in which Defendant requested and received certified medical records from Louisiana Pain Specialists. This includes all digital records, downloading records, transmission records, server records, data storage records, filing records, email records, facsimile records, U.S. mail records, and call records relating to Defendant's request for certified medical records as well any corresponding communications related to Defendant's request for records between Defendant and any other person, party, company, or other entity, including but not limited to Louisiana Pain Specialists and MedSouth Record Management, LLC. If Defendant was required to "download" documents from Louisiana Pain Specialists and/or MedSouth Management, LLC or any other medical record provider then all digital "footprints" showing the time and date of any downloading should be maintained as well as the time and date on which these records became available to Defendant to "download."

[56] At best, the actual date Defendant received certified records from Louisiana Pain Specialists remains a contested issue of fact as Defendant has done nothing more than claim without support that Defendant received the certified records on March 5, 2024. The Court, however, is required under the law to "resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in plaintiff's favor." *Morgan v. Chubbs Lloyds Ins. Co. of Tex*., 541

Therefore, given that Defendant has failed to meet their required burden of demonstrating that this action was timely removed, Plaintiff prays that the Court remand this matter to the Civil District Court for the Parish of Orleans.

**D.    Defendant Waived Its Right to Remove This Matter By Entering Into a Stipulated Protective Order For Orleans Parish Civil District Court to "Govern the Handling" of Confidential Information *After* Defendant Claimed the Action Was Removeable**

Defendant waived its right to remove this matter to federal court because Defendant sought affirmative relief in the form of a Stipulated Protective Order in state court *after* Defendant allegedly "first learned" the case was removeable.

If a party has good ground to remove a case to federal court, he cannot experiment on his case in state court before removing the case to federal court.[57] Even a defendant who petitions timely may have waived its right to removal by proceeding to defend the action in state or otherwise invoking the processes of that court.[58] "A state court defendant may lose or waive the right to remove a case to federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court, such as asserting a counterclaim or engaging in pretrial discovery."[59] In order for a defendant to waive its right to removal, the defendant must have taken action in state court only *after* the basis for removal came into existence.[60]

---

F.Supp.3d 754, 757 (N.D. Tex. 2021) (Pittman, J.) (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).  As such, Plaintiff submits that the Court should rule that Defendant failed to prove that Defendant timely filed its Notice of Removal within thirty (30) days after receiving the certified medical records from Louisiana Pain Specialists.

[57] *Carpenter v. Illinois Cent. Gulf R. Co*., 524 F.Supp.249, 251 (La. M.D. 1981) (citing *Rosenthal v. Coates*, 148 U.S. 142, 13 S. Ct. 576, 37 L.Ed. 399 (1893).

[58] *Brown v. Demco, Inc*., 792 F.2d 478, 481.

[59] 14B Federal Practice & Procedure, § 3721, at 363-65.

[60] *See State Farm Fire and Cas. Co. v. Valspar Corp., Inc*., 824 F.Supp.2d 923, 949 (D.S.D. Western Div. 9/24/10).

For example, in *Carpenter v. Illinois Cent. Gulf R. Co.*, a case involving an automobile-train collision, the Court held that an insurer who merely filed an answer in state court did not waive its right to remove.  The Court reasoned that "an answer filed in state court does not exhibit an intent" to be bound to state court.  The Court advised that in merely filing an answer, "there is no request for affirmative relief, no litigation on the merits, and no prejudice to any of the parties."

In this case, Defendant claimed to have "first learned" that this action was removeable on March 5, 2024.[61]  After the alleged basis for removal came into existence, however, Defendant then sought to take affirmative action to litigate this case in Orleans Parish Civil District Court.  Specifically, on March 28, 2024, Defendant filed a Stipulated Protective Order "on motion of Defendant, DoorDash, Inc." seeking to have the state court "govern the handling" of "Confidential Information."[62]  As such, the record is clear that DoorDash, Inc. took this affirmative action in state court *after* DoorDash, Inc. claimed to know that the case was removeable, which meets the prerequisite for waiver of removal.

By way of background, Plaintiff previously filed on February 1, 2024 a Motion to Compel DoorDash, Inc. to answer Plaintiff's Interrogatories and Requests for Production as DoorDash, Inc. had failed to respond despite multiple extensions.[63]  The Court then signed a Consent Judgment on February 29, 2024 granting Plaintiff's Motion to Compel in full and requiring Defendant to answer discovery no later than March 13, 2024.[64]  Defendant answered Plaintiffs' discovery requests on March 13, 2024, and then raised for the first time that Defendant would not produce certain discovery documents unless Plaintiff agreed to a stipulated protective order for

---

[61] See removing Defendant's Notice of Removal ¶ XII , Rec. Doc 2.
[62] Rec. Doc. 6-4, p. 31-33.
[63] Rec. Doc. 6-3, p. 1-9.
[64] Exhibit E, Consent Judgment, dated February 29, 2024.

Orleans Parish Civil District Court to govern the handling of certain documents DoorDash, Inc. deemed "Confidential."[65]   Plaintiff agreed to enter into the stipulated protective order with DoorDash, Inc., which DoorDash, Inc. then filed on March 28, 2024 and the protective order was then entered by the Court that same day.

Plaintiffs submit that moving the state court to "govern the handling" of all documents DoorDash, Inc. deems "confidential" in this case, DoorDash, Inc. waived its right to remove this matter to federal court.  It is clear and unequivocal that Defendant sought to litigate this matter in state court as Defendant drafted, filed, and required Plaintiff as well to comply with the numerous cumbersome procedures outlined in the Stipulated Protective Order after the action became removeable.  These requirements, per the protective order include, but are not limited, to the following:

> 5.  Any party wishing to file any Confidential Information with the court, including any portion of a court filing that discloses Confidential Information, **shall file the documents separately "under seal."**  When filing a motion, the filing party will cite to the court the grounds for filing the Confidential Information under seal.

> 6.  If any party contends that any document has been erroneously designated "Confidential" it shall nevertheless treat the document as confidential unless and until it either (a) obtains the Designating party's written permission to do otherwise, or (b) brings a Motion to Vacate Confidential Designation **before this Court and obtain an order of this Court** stating that the document or information is not confidential and shall not be given confidential treatment.  Upon bringing a Motion to Vacate Confidential Designation the burden falls upon the Designating Party to explain and justify why the subject "Confidential Discovery Material" or "Confidential Information" should be treated as confidential, and upon bringing the Motion, the confidential documents (if included as exhibits) will be filed under seal until otherwise designated by the Court that they are not confidential.  Nothing in this Order shall constitute a waiver of any parties' rights to object to the designation of a particular document as confidential.[66]

---

[65] Exhibit F, DoorDash, Inc.'s Answers to Plaintiff's Interrogatories and Requests for Production.

[66] Rec. Doc. 6-4, p. 31-33 (emphasis added)

Accordingly, it is clear that after Defendant already knew the case was removeable, Defendant nonetheless intentionally and purposefully sought to have the state court govern all handling of the substantial confidential material sought in discovery in this case. Defendant sought the state court's jurisdiction not merely to protect this information but also to have the state court rule on all future motions concerning any disputes regarding the confidentiality of the relevant discovery. As it clear from the document, Defendant refers to "this Court" and its power to hear motions to vacate confidentiality designations as the Orleans Parish Civil District Court as that is the court in which this Stipulated Protective Order was filed.

Plaintiffs further submit that allowing Defendant to remove this matter would cause prejudice to Plaintiffs. Plaintiffs have already had significant difficulty obtaining discovery from Defendant having had to file a prior motion to compel and have incurred delays in receiving discovery from Defendant due to Defendant requesting that Plaintiff stipulate to the protective order.[67] Plaintiff objects to being required to enter into a new and separate protective order for the federal court to now assume the state court's oversight over what Defendant may continue to deem "confidential information" over the course of this case.

Therefore, given that Defendant clearly and unequivocally took affirmative action in state court after Defendant claimed the action became removeable, Defendant waived its right to remove. As such, Plaintiff submits that this matter should be remanded.

E.    **Defendant's Notice of Removal is Procedurally Deficient Under Local Rule 3.2 Because Defendant Did Not List Bryson Matthew Faul as a Party Remaining in the Action**

---

[67] See Plaintiff's Motion to Compel, Rec. Doc. 6-3, p. 1-9.

The record is clear that in addition to Defendant's removal being untimely, Defendant also committed multiple procedural errors under the Eastern District Court's Local Rule 3.2  Local Rule 3.2 governing removal states as follows:

> Pursuant to 28 U.S.C. § 1447(b), in every case in which a Notice of Removal is filed, the removing defendant must file, within 14 days of removal:
> (a) A list of all parties remaining in the action
> (b) Copies of all pleadings, including answers, filed in state court; and
> (c) Copies of the return of service of process filed in state court on those parties.

In this case, Defendant failed to comply with Local Rule 3.2(a) because Defendant did not file a list of *all* parties remaining in the action within 14 days of removal.  In Defendant's Notice of Compliance, Defendant failed to list Bryson Matthew Faul as a party remaining in this action.

As the record reflects, Plaintiffs named Bryson Matthew Faul as a defendant in their Petition for Damages, and Mr. Faul has not yet been dismissed by this Court, nor the Civil District Court for the Parish of Orleans.  As such, Bryson Matthew Faul remains a party in this action.

A review of Defendant's Notice of Compliance, however, shows that Defendant failed to list Mr. Faul is a remaining party.  Defendant removed this action on April 3, 2024, and accordingly, had until April 17, 2024 to list Mr. Faul as a remaining party.  Defendant failed to do so.  As such, Defendant's Notice of Removal is procedurally deficient.  Plaintiffs pray that this matter be remanded.

**F.      Defendant's Notice of Removal is Procedurally Deficient Under Local Rule 3.2 Because Defendant Did Not File A Copy of the Consent Judgment Filed in State Court Pursuant to Plaintiff's Motion to Compel Defendant to Answer Plaintiff's Interrogatories and Requests for Production**

Under the Eastern District's Local Rule 3.2(b), Defendant was required to file copies of all pleadings filed in state court within 14 days of removal.  Defendant, however, failed to comply with this procedural requirement as Defendant neglected to file the Consent Judgment rendered in

Civil District Court for the Parish Orleans regarding Plaintiff's previously filed Motion to Compel against Defendant.

By way of back ground, Plaintiff had provided Defendant with multiple extensions to answer Plaintiff's Interrogatories and Requests for Production, but Defendant failed to do so. As a result, Plaintiff filed a Motion to Compel.[68] On February 29, 2024, the Court issued a Consent Judgment granting Plaintiff's Motion to Compel in full requiring Defendant to answer Plaintiff's discovery requests.[69]

Under Local Rule 3.2, Defendant was required to file copies of all pleadings filed in state court within 14 days of removal, including the Consent Judgment rendered by the Civil District Court for the Parish of Orleans. Defendant, however, did not file a copy of the Consent Judgment within 14 days of removal. As a result, Defendant's removal is procedural deficient and this matter should be remanded.

## CONCLUSION

For the reasons stated above, Defendant cannot satisfy its burden proving federal jurisdiction and that removal was procedurally proper. As removal is strictly construed, and all issues of material fact and other ambiguities must be resolved in the non-removing party's favor, Plaintiff submits that there is ample evidence of procedural deficiencies in Defendant's Notice of Removal to warrant remand. Therefore, Plaintiffs respectfully request that the Court remand this matter to the Civil District Court for the Parish of Orleans.

Respectfully submitted:

**THE VOORHIES LAW FIRM**

---

[68] Rec. Doc. 6-3, p. 4-9.
[69] Exhibit E, Consent Judgment, dated February 29, 2024.

BY:    */S/ James F. Flinn*_____

Richard P. Voorhies III (#30782)
James Francis Flinn (#34287)
("Trial Attorney")
1100 Poydras St., Suite 2810
New Orleans, LA 70163
Telephone: (504) 875-2223
Fax: (504) 875-4882
Email: richard@voorhieslaw.com
      james@voorhieslaw.com
*Attorneys for Plaintiffs, Natalie Proszak and Leonardo Rivera*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this 29th day of April, 2024, with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*/S/ James F. Flinn*_____

James F. Flinn (#34287)